## AGREEMENT AND GENERAL RELEASE

THIS AGREEMENT AND GENERAL RELEASE ("Agreement") is made by and between Oscar Ivan Aguilar Benitez and Diana Carina Salgado Perez (collectively the "Plaintiffs"); and Hsing Lung, Inc. d/b/a Hsing's Garden ("Defendant"). Plaintiffs and the Defendant are referred to collectively as "the Parties" in this Agreement.

## RECITALS

WHEREAS, Plaintiffs filed a lawsuit against Defendant (and others) captioned *Benitez, et al. v. Hsing Lung, Inc., et al.*, in the United States District Court for the Eastern District of Michigan, docket #1:20-cv-11512 ("the Action") alleging that Defendant, along with Defendants "Jane Doe 1 a/k/a Mei" and "Jane Doe 2 a/k/a Lu" are liable for unpaid minimum wage and overtime premium pay, liquidated damages, penalties, attorneys' fees and/or interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*; and/or the Michigan Improved Workforce Opportunity Wage Act ("IWOWA"), M.C.L. §408.931 *et seq.*, all of which Defendant has from the outset denied and continues to deny; and

WHEREAS, the Parties have considered that the interests of all concerned are best served by compromise, settlement and the dismissal of the action with prejudice, and have concluded that the terms of this Agreement are fair, reasonable, adequate and in their mutual best interests; and

WHEREAS, to the extent there may be monies owed to Plaintiffs under the FLSA and/or IWOWA, the Parties acknowledge there are genuine good faith disputes as to, among other things, the calculation of the number of hours worked by the Plaintiffs, the calculation of the amount of compensation paid by Defendant to the Plaintiffs, including a genuine good faith dispute regarding the value of room and board provided to Plaintiffs by Defendant, and whether or not that is

includable as remuneration or compensation to the Plaintiffs and good faith disputes as to whether or not Defendant is covered under the FLSA; and

WHEREAS, the Parties have, through their legal counsel, engaged in settlement negotiations and as a result have agreed to settle the issues, matters and things in dispute among them in the action pursuant to the terms of this Agreement; and

NOW, THEREFORE, in consideration of the mutual terms, conditions and covenants set forth herein, the Parties agree as follows:

1. **Settlement.** The Parties acknowledge and agree that this Agreement and the consideration provided have been and are made and received solely on the basis of a compromise of disputed claims, and that this Agreement is not, and should not be construed as an admission by the Defendant of any liability or wrongdoing whatsoever, nor is it, nor shall it be construed as, an admission of any act or fact whatsoever, including but not limited to any violation of federal, State, local or common law, statute, ordinance, directive, regulation or order (including executive order).

2. **Payment to the Plaintiffs.** In return for the good and sufficient consideration set forth in this Agreement, the Parties agree to the following:

   A. Defendant shall pay the Plaintiffs and their counsel a total gross sum of $26,000 in the manner set forth below:

   B. (1) To Plaintiff Benitez: $4,868.49, of which $2,434.25 represents payment of unpaid wages and overtime, and $2,434.24 represents liquidated damages;

   (2) To Plaintiff Perez: $10,709.61, of which $5,354.81 represents payment of unpaid wages and overtime, and $5,354.80 represents liquidated damages; and

   (3) To Plaintiffs' counsel: $10,421.90 which represents costs and reasonable attorney fees.

      3.      **<u>General Release and Waiver of Rights and Claims by the Parties.</u>**      In return for the consideration described above, Plaintiffs unconditionally release and forever discharge Defendant, its agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, and Defendant unconditionally releases and forever discharges Plaintiffs, their agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, back wages, benefits, attorney fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, charges, complaints and demands whatsoever, in law or equity, of any and every kind, nature and character, known or unknown, which against Plaintiffs, Defendant, they or their heirs, successors, administrators, agents, or assigns ever had, may now have or hereafter can, shall or may have, arising under any federal, State or local, wage hour, or labor laws and/or regulations, or contract from the beginning of time to the date this Agreement is executed by the parties, including, but not limited to:

    A. All claims under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*; Michigan Improved Workforce Opportunity Wage Act, Mich. Comp. L. §408.931 *et seq.*; the Equal Pay Act, 29 U.S.C. §206; The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq.*; any amendments to the statutes referred to herein; sales commissions earned or accrued, whether as an employee or independent contractor; any costs, damages, interest, liquidated damages or attorneys' fees relating to any such alleged violations; alleged unpaid wages, salary or overtime compensation; employee classification; exempt classification; "at will" classification; and any claims

       relating to procurement of customers, sub-agents, business, finder's fees, or any other asserted basis for an additional remuneration or other awards; and any other federal, State or local law relating to employee wages and hours;

B. All claims alleging breach of promise, breach of contract or implied contract; fraud, misrepresentation; fraudulent inducement; promissory estoppel; unjust enrichment; quantum meruit; conversation, defamation; or otherwise arising under any common law theory or in tort, contract or quasi contract, whether in law equity;

C. All claims for fringe benefits; employee benefits; employee contributions; supplemental benefits; allowances; reimbursement; participation in any benefit plan; administration or application of any benefit plan; and any claims for non-vested benefits arising under ERISA; and

D. All claims for payment of income and employment taxes.

    **4.** **No Other Payment Due Except As Specifically Provided In This Agreement.** Plaintiffs agree that they are not entitled to any other payments for salary, benefits, wages, bonuses, allowances, compensatory time, severance pay, notice pay, vacation or holidays, accrued leave, paid leave, or any other form or kind of payment or compensation from the Defendant for any work they performed for Defendant during the relevant period as defined in the Complaint through the date the Parties execute this Agreement.

    **5.** **Accord and Satisfaction.** Should any proceeding be instituted by Plaintiffs with respect to matters here settled, released or waived pursuant to the Agreement, other than an action or proceeding to enforce the terms of this Agreement, this Agreement shall be deemed full accord, satisfaction and settlement of any such claim(s) and sufficient basis for immediate dismissal.

6. **<u>Dismissal of the Action.</u>**

A. Plaintiffs promise and represent that they will withdraw, discontinue and dismiss, with prejudice, all judicial actions concerning improper payment of wages, including without limitation, the Action, as well as any all other lawsuits, claims, counterclaims, demands, appeals or actions concerning improper payment of wages pending against the parties they have released herein; and will also withdraw, with prejudice, any and all outstanding administrative complaints or charges alleging improper payment of wages, filed with federal, State and/or local agencies/administrative bodies; and Plaintiffs will not accept any money from or file any other currently existing internal or external administrative or judicial complaints, charges, lawsuits, claims, demands, appeals or actions of any kind based on Defendant's improper payment of wages to the Plaintiffs during their employment by Defendant through the date this Agreement and General Release is executed by the Parties.

B. Payment of the settlement amount due under this agreement is contingent upon the Court approving this Agreement, and payment shall be made, in full, within fifteen (15) days following such approval.

C. After payment pursuant to this Agreement is received by Plaintiffs' counsel, which is due on or before the fifteenth (15th) day after the Court approves this Agreement, Plaintiffs, through counsel, shall execute a Stipulation of Voluntary Dismissal (including dismissal of all claims as to the "Jane Doe" Defendants), with prejudice, and provide a signed copy of such to counsel for the Defendant.  Counsel for the Defendant shall file a fully executed copy of the Stipulation of Dismissal, with prejudice, with the

Court. Further, the Parties agree to use their mutual best efforts to obtain the Court's approval of this Agreement and endorsement of the Stipulation of Dismissal.

7. **Claims Not Included.** The Parties agree that the above paragraphs shall mutually release the Parties from liability to the fullest extent permitted by law and only to the extent permitted by law. The Parties acknowledge that this Agreement does not prohibit the following rights or claims: 1) Claims that arise after the date the Parties execute this Agreement; and 2) any rights or claims, whether specified above or not, that cannot be waived as a matter of law pursuant to federal, State or local statute. If it is determined that any claim covered by this Agreement cannot be waived as a matter of law, the Parties expressly agree that the Agreement will nevertheless remain valid and fully enforceable as to the remaining released claims.

8. **Entire Agreement.** The Parties represent and acknowledge that they have carefully reviewed each and every word of this Agreement to ensure complete understanding of the Agreement's full effect and that it contains the entire understanding between them and that they are not relying upon any representations or statements, written or oral, made by or on behalf of any party not set forth herein.

9. **Plaintiffs' Consultation With Legal Counsel.** Plaintiffs represent that they have been advised to consult legal counsel regarding this Agreement, and that they have done so. Plaintiffs further represent that after having had a full opportunity to review and consider the terms and conditions of this Agreement, and having discussed them with their counsel and having had sufficient time to review and consider this Agreement, they each fully understand all of the provisions of this Agreement and each has executed the same freely and voluntarily.

10. **Non-Disparagement.**   The Parties agree not to disparage any Plaintiff or Defendant involved in this action in any way, or to say or do anything that would harm the reputation of that individual and/or corporate entity.

11. Waiver **and Modification.**   This Agreement and General Release may not be modified, altered or changed except upon the express written consent of the Parties.

12. **Counterparts.**   This Agreement and General Release may be executed in counterparts and/or by facsimile or other electronic means and shall remain entirely enforceable.

13. **Use of the Singular.**  Whenever used in this Agreement and General Release, the singular word shall indicate the plural, the plural the singular, and the use of any gender shall be applicable to all genders.  This Agreement shall not be interpreted in favor of, or against, either party because of such party being considered to have drafted this Agreement.

14. **Governing Law.**   This Agreement shall be subject to and governed by the laws of the State of Michigan.

15. **Severability.**  If any term or provision of this Agreement and General Release, or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and shall be enforced to the fullest extent permitted by law; provided, however, that upon any finding by a court of competent jurisdiction or governmental agency that any of the releases provided for in paragraph 3 are illegal, void or unenforceable, or not entered into knowingly and voluntarily or otherwise ineffective, Plaintiffs agree to promptly execute a release, waiver and/or covenant that is legal and enforceable to the Defendant.

IN WITNESS WHEREOF, Plaintiffs and Defendant have executed this Agreement as of the _____ day of October, 2020.

_____  _____
Oscar Ivan Aguilar Benitez                Diana Carina Salgado Perez


HSING LUNG, INC.


_____
By: Chihwei Edward Laing
    Its: President